UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEON M. SORIANO,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>M. E. SPEARMAN, et al.,<br><br>　　　　　Defendants. | No. 2:17-cv-1617 DB P<br><br><br>ORDER AND<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983. Previously, plaintiff's first and second amended complaints were screened and dismissed with leave to amend for failure to state a claim. (ECF Nos. 10, 17.) Pending now is plaintiff's third amended complaint for review.

**I.　　Screening Requirement**

The in forma pauperis statute provides, "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

**II.　　Pleading Standard**

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." <u>Wilder v. Virginia Hosp.</u>

1

Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

**III.    Plaintiff's Allegations**

At all times relevant to this action, plaintiff was a state prisoner housed at High Desert State Prison in Susanville, California. He names as defendants M.E. Spearman, Warden; S. Kelly, Sergeant; and G. Speers, Sergeant.

Plaintiff's allegations may be fairly summarized as follows:

Plaintiff is a practicing Muslim. He accuses Sergeant Speers of refusing to allow Muslim inmates to perform their prayers inside the chapel although he allows other religious groups to do so. Muslim inmates are thus forced to pray outside in "extreme" weather conditions, including cold, snow, and rain. Plaintiff filed an inmate grievance regarding Sergeant Speers's conduct, which Sergeant Kelly denied. Though not entirely clear, Warden Spearman drafted a memo that denied Muslim inmates access to the chapel.

Because of the defendants' conduct, plaintiff suffered insect bites, continuous colds, and, due to a weakened immune system, a forced hospitalization. Plaintiff seeks $5,000 in damages.

## IV. Discussion

### A. First Amendment Free Exercise

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend I. "The first of the two Clauses, commonly called the Establishment Clause, commands a separation of church and state. The second, the Free Exercise Clause, requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people." Cutter v. Wilkinson, 544 U.S. 709, 719 (2005). The free exercise right is necessarily limited by the fact of incarceration, and may be curtailed to achieve legitimate correctional goals or to maintain prison security. See O'Lone v. Shabazz, 482 U.S. 342, 348-49 (1987). To prevail on a free exercise claim, a prisoner must show a defendant burdened the practice of his religion without any justification reasonably related to legitimate penological interests. See Shakur v. Schriro, 514 F.3d 878, 883-84 (9th Cir. 2008).

The Supreme Court has identified four factors for courts to consider when determining whether a regulation or practice is reasonably related to legitimate penological interests: (1) whether there is a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it," (2) "whether there are alternative means of exercising the right that remain open to prison inmates," (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally," and (4) the "absence of ready alternatives," or, in other words, whether the rule at issue is an "exaggerated response to prison concerns." Turner v. Safley, 482 U.S. 78, 89-90 (1987) (citation omitted). The task in considering the Turner factors is not to balance the four factors, but, rather, to determine whether the state shows a "reasonable" relation between the policy and legitimate penological objectives, rather than simply a "logical" one. Beard v. Banks, 548 U.S. 521, 533 (2006).

Plaintiff here claims that the defendants' conduct of requiring Muslim inmates to pray outside burdened the practice of his religion. These allegations are sufficient to state a claim

////

against Warden Spearman, the author of a memo that purportedly requires Muslim inmates to pray outside, and Sergeant Speers, who personally directed Muslim inmates to pray outside.

**B. Fourteenth Amendment Equal Protection Claim**

The Equal Protection Clause requires that an inmate who is an adherent of a minority religion be afforded a "reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts," Cruz v. Beto, 405 U.S. 319, 322 (1972), as long as the inmate's religious needs are balanced against the reasonable penological goals of the prison, O'Lone v. Estate of Shabazz, 482 U.S. 342, 3492 (1987). See Allen v. Toombs, 827 F.2d 563, 568-69 (9th Cir. 1987). When challenging his treatment with regard to other prisoners, a prisoner must show that his treatment is invidiously dissimilar to that received by other inmates. More v. Farrier, 984 F.2d 269, 271-72 (8th Cir. 1993). If the inmate is receiving invidiously different treatment from other inmates, the Court must consider whether "the difference between the defendants' treatment of [the inmate] and their treatment of [other] inmates is 'reasonably related to legitimate penological interests.'" Shakur, 514 F.3d at 891.

The first step in determining whether the inmate's equal protection rights were violated is to identify the relevant class of prisoners to which he belongs. Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013). The class must be comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified. Id. at 1031 (affirming district court's grant of defendants' motion for summary judgment because inmate failed to raise triable issue of fact that he was treated differently than any other inmate whom the officers did not know was entitled to a vegetarian meal).

Presumably plaintiff is alleging that he, and other Muslims, are being treated differently than inmates of other faiths. These allegations are sufficient to state a claim against Warden Spearman and Sergeant Speers.

**C. Eighth Amendment Conditions of Confinement**

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v.

Brennan, 511 U.S. 825, 847 (1994), and Rhodes v. Chapman, 452 U.S. 337, 347 (1981)) (quotation marks omitted). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted). Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment. Morgan, 465 F.3d at 1045 (quotation marks and citations omitted); Hope v. Pelzer, 536 U.S. 730, 737 (2002); Rhodes, 452 U.S. at 346. Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted).

To maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety. E.g., Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost, 152 F.3d at 1128. The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious...." Farmer, 511 U.S. at 834. "[R]outine discomfort inherent in the prison setting" does not rise to the level of a constitutional violation. Johnson, 217 F.3d at 731.

Rather, extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Farmer, 511 U.S. at 834; Hudson v. McMillian, 503 U.S. 1, 9 (1992). The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. Johnson, 217 F.3d at 731. Second, the prison official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety...." Farmer, 511 U.S. at 837. Thus, a prison official may be held liable under the Eighth Amendment for

5

denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. Id. at 837-45. As discussed above, a person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). Mere negligence on the part of the prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. Id. at 835; Frost, 152 F.3d at 1128.

The undersigned finds that plaintiff has stated a viable Eighth Amendment claim only against Sergeant Speers for this defendant's alleged role in requiring Muslim inmates to pray outside in "extreme" weather conditions, including rain and snow.

### D. Inmate Appeals

Sergeant Kelly's role in the violation of plaintiff's rights is premised on this defendant's denial of plaintiff's inmate grievance. Plaintiff was previously informed that he does not a have protected liberty interest in the processing of his appeals, and therefore, he cannot pursue a claim for denial of due process with respect to the handling or resolution of his appeals. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)).

Problems with the grievance process, such as the failure to respond and/or properly process an appeal, does not in and of itself state a violation of constitutional rights. Since plaintiff has neither a liberty interest nor a substantive right in inmate appeals, he is unable to state a cognizable claim merely for the deficient handling and/or processing of an inmate grievances. Accordingly, plaintiff's claim against this defendant must be dismissed.

### E. Religious Land Use and Institutionalized Persons Act

The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ..., even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—

6

>             (1) is in furtherance of a compelling government interest; and
>
>             (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1(a). Plaintiff must allege facts demonstrating that defendants substantially burdened the exercise of his religious beliefs. Warsoldier v. Woodford, 418 F.3d 989, 994-95 (9th Cir. 2005). In any RLUIPA claim, one must first identify the "religious exercise" allegedly impinged upon, and then must ask whether the prison regulation at issue "substantially burdens" that religious exercise. Greene v. Solano County Jail, 513 F.3d 982, 987 (9th Cir. 2008).

"RLUIPA does not define 'substantial burden,' but [the Ninth Circuit] has held that 'a substantial burden on religious exercise must impose a significantly great restriction or onus upon such exercise.'" Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1124-25 (9th Cir. 2013) (citing San Jose Christian Coll. v. City of Morgan Hill, 360 F.3d 1024, 1034 (9th Cir. 2004)). "Generally, the term 'substantial burden' in RLUIPA is construed in light of federal Supreme Court and appellate jurisprudence involving the Free Exercise Clause of the First Amendment prior to the Court's decision in Emp't Div. Dep't of Human Res. of Oregon v. Smith, 494 U.S. 872, 878-82 (1990)." Int'l Church of Foursquare Gospel, 673 F.3d at 1067 (citing Guru Nanak Sikh Soc. Of Yuba City v. County of Sutter, 456 F.3d 978, 988 (9th Cir. 2006)). "In the context of a prisoner's constitutional challenge to institutional policies, this court has held that a substantial burden occurs 'where the state ... denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" Hartmann, 707 F.3d at 1124-25 (citing Warsoldier v. Woodford, 418 F.3d 989, 995 (9th Cir. 2005)).

Insofar as plaintiff intends to assert a RLUIPA claim, he fails because the only form of relief that he seeks here is damages, and the law is clear that RLUIPA does not authorize money damages against state officials, regardless of whether they are sued in their official or individual capacities. See Jones v. Williams, 791 F.3d 1023, 1031 (9th Cir. 2015).

////
////
////

**V.     Conclusion**

Based on the foregoing, IT IS HEREBY ORDERED that a district judge be assigned to this case; and

IT IS HEREBY RECOMMENDED that this action proceed against Sergeant Speers on an Eighth Amendment conditions of confinement claim and against Warden Spearman and Sergeant Speers on a First Amendment Free Exercise claim and a Fourteenth Amendment Equal Protection claim. All other claims and defendants should be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, plaintiff may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections. Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  September 6, 2018

/s/ DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

/DLB7;
DB/Inbox/Substantive/sori1617.scrn 3AC

8